## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Yukos Oil Company, | § | Case No. 04-47742-H3-11 |
| | § | |
| Debtor. | § | Chapter 11 |

| | | |
|---|---|---|
| | § | |
| Yukos Oil Company, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| Russian Federation, OOO Gazpromneft, | § | Adversary Proceeding No. _____ |
| ZAO Intercom, | § | |
| OAO First Venture Company and all | § | |
| potential bidders similarly situated, | § | |
| ABN Amro, BNP Paribas, Calyon, | § | |
| Deutsche Bank, JP Morgan, | § | |
| Dresdner Kleinwort Wasserstein and all | § | |
| financial institutions similarly situated, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT
## FOR INJUNCTIVE RELIEF

Plaintiff Yukos Oil Company ("Debtor") files this Original Complaint for Injunctive

Relief (the "Complaint") against defendants the Russian Federation, OOO Gaspromneft, ZAO

Intercom, OAO First Venture Company, ABN Amro, BNP Paribas, Calyon, Deutsche Bank, JP

Morgan and Dresdner Kleinwort Wasserstein (collectively, the "Defendants") and respectfully

shows the Court as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PROCEDURAL STATUS

2.      On the date hereof (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to operate its business and its properties as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

## PARTIES

3.      Plaintiff, Yukos Oil Company is a publicly-traded joint stock corporation organized under the laws of the Russian Federation with a place of business in Harris County, Texas.

4.      Defendant, the Russian Federation is a foreign state and may be served with process pursuant to Section 1608(a) of the Foreign Sovereign Immunities Act of l976, Pub. L. 94-583, 90 Stat. 289l, 28 U.S.C. §1608, which provides that "[s]ervice in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state: … (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents."  The applicable international convention on service of judicial documents is The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and

Commercial Matters, 20 UST 36l; TIAS 6638 (the "Convention").[1]   Therefore, the Russian

Federation may be served with process through Articles 3 through 6 of the Convention.   The

Russian Federation has declared that "The Ministry of Justice of the Russian Federation is

designated as the Central Authority for the purposes of Article 2 of the Convention . . . Address:

The Ministry of Justice of the Russian Federation, ul. Vorontsovo Pole, 4a, Moscow 109830,

GSP, Gh-28 Russian Federation."

5.       Defendant OOO Gazpromneft ("Gazprom") is a publicly-traded joint stock

company organized under the laws of the Russian Federation and majority-owned by the Russian

Government whose principal place of business is in the Russian Federation and may be served

with process through Articles 3 through 6 of the Convention.

6.       Defendant ZAO Intercom (or Interkom) ("Intercom"), according to B.B.C. press

reports, is an unknown closed stock company that the Russian Federation's Federal

Antimonopoly Service announced has submitted an application for clearance to bid at the

December 19, 2004 auction for the stock of Yuganskneftegaz.   Once it is determined whether

Intercom actually exists, Plaintiff will endeavor to serve Intercom with process according to the

appropriate convention.

7.       Defendant OAO First Venture Company (Pervaya Venchurnaya Kompaniya)

("First Venture"), according to B.B.C. press reports, is an unknown company that the Russian

Federation's Federal Antimonopoly Service announced has submitted an application for

clearance to bid at the December 19, 2004 auction for the stock of Yuganskneftegaz.   Once it is

---

[1]The United States of America acceded to the Convention on August 24, 1967 and it entered into force in the United
States of America on February 10, 1969; the Russian Federation acceded to the Convention on May 1, 2001 and it
entered into force in the Russian Federation on July 1, 2001.

determined whether First Venture actually exists, Plaintiff will endeavor to serve First Venture with process according to the appropriate convention.

8.      Plaintiff also seeks to enjoin all other potential bidders at the December 19, 2004 auction scheduled in Moscow for the stock of Yuganskneftegas, the Debtor's primary asset.

9.      Defendant ABN Amro is a foreign financial institution that is registered to do business in Texas and may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

10.      Defendant BNP Paribas is a foreign financial institution organized under the laws of France that is registered to do business in Texas and may be served with process by serving its registered agent, Timothy Donnon, 1200 Smith Street, Suite 3100, Houston, Texas 77002.

11.      Defendant Calyon is a foreign financial institution organized under the laws of France that is registered to do business in Texas and may be served with process by serving its registered agent, Patrick Cocquerel, 600 Travis, Suite 2340, Houston, Texas 77002.

12.      Defendant Deutsche Bank, A.G. is a foreign corporation organized under the laws of Germany that is registered to do business in California and may be served with process by serving its registered agent, Ross A. Howard, 50 California Street, Suite 1500, San Francisco, CA 94111 or its President, Michael Rassmann, 31 West 52nd Street, 28th Floor New York, N.Y. 10019. Deutsche Bank Securities, Inc. is registered to do business in Texas and may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

13.      Defendant Dresdner Kleinwort Wasserstein, Inc. is a corporation organized under the laws of the state of Texas and may be served with process by serving its registered agent, CT Corporation System, 701 Brazos, Suite 430, Austin, Texas 78701.

14.    Defendant JP Morgan Chase & Co. is a corporation organized under the laws of the state of Delaware and may be served with process by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

15.    Plaintiff also seeks to enjoin any and all other banks and financial institutions that do business in the United States that would provide any financing for any bidders at the December 19, 2004 auction scheduled in Moscow for the stock of Yuganskneftegas, the Debtor's primary asset.

<div align="center"><u>**BACKGROUND**</u></div>

16.    This Complaint is verified by Bruce K. Misamore and it is also supported by the Affidavit of Bruce K. Misamore in Support of First Day Motions that (the "Affidavit") that is filed contemporaneously herewith.   The Affidavit describes the facts set forth below, plus additional facts relevant to this case.

**<u>Yukos Corporate Structure</u>**

17.    Yukos Oil Company ("Yukos") is a open joint stock company existing under the laws of the Russian Federation.  Yukos is involved in the energy industry substantially through its ownership of its various subsidiaries, which own or are otherwise entitled to enjoy certain rights to oil and gas production, refining and marketing assets.  Yuganskneftegas ("YNG") (a Russian company), which is a direct wholly-owned subsidiary of Yukos, owns or enjoys the benefits of a majority of Yukos' oil and gas reserves and production.  YNG currently produces in excess of 60% of the oil and gas produced by the Yukos companies.  Yukos' international trading operations are primarily done through its subsidiary Petroval (a Swiss company).

18.    Only Yukos is currently before this Court in a Chapter 11 case because, within one week, Yukos is about to suffer immediate and irreparable harm.   If Yukos is able to obtain

injunctive and related relief from this Court, it may never need to file a Chapter 11 case for its various affiliated companies.[2]

## Size Of Yukos

19.      Yukos and its subsidiaries are the largest producers of crude oil in Russia, and the largest exporters of crude oil from Russia.  Yukos and its subsidiaries produce slightly less than 20% of all the crude oil produced in Russia, and refine and market slightly less than 20% of the refined products in Russia.   Yukos is generally regarded as Russia's most progressive, transparent, and successful multinational company, and, as a result, attracted a considerable amount of foreign investment from around the world, including significantly from the United States.

## Ownership of Yukos

20.      Approximately 25% of the common stock of Yukos is owned by entities, many of which are United States residents, that purchased their stock through public markets sources.  At different times, 15% to 19% of Yukos' common stock has been owned by large institutional investors, many of which are United States residents.[3]

## Yukos Has Sought Investors In The United States And Registered With The SEC

21.      Yukos has engaged in substantial activity in the United States to attract investors and lenders, soliciting investment in particular from oil and gas industry participants in Houston and elsewhere in the United States.  In 2002, Yukos' then CEO, Mr. Mikhail Khodorkovsky, was a keynote speaker at the Baker Institute in Houston, talking about the need for investment in

---

[2] In all, Yukos has over 600 subsidiaries, about 200 of which are currently active.

[3] Approximately 60% of Yukos' shares are owned by a Cypriot company, which is, in turn, owned by an Isle of Man company, which is a subsidiary of a Gibraltar company.

Additionally, approximately 10% of Yukos' stock is owned by a Guernsey Trust for the benefit of certain retiring employees of Yukos.

Russian companies such as Yukos.  Mr. Khodorkovsky has also been a regular keynote speaker at the CERA(Cambridge Energy Research Associates)Week conference in Houston, the largest oil and gas conference in the world, held annually.  Mr. Khodorkovsky has been a major worldwide philanthropist, including philanthropies in the U.S.

22.     Mr. Bruce Misamore, Yukos' CFO, and Mr. Alexander Gladyshev, Yukos' Manager of Investor Relations, were regular participants and speakers at oil, gas and emerging markets investor conferences in the United States.  Mr. Misamore and Mr. Gladyshev have also met regularly in the United States with the investment management arms of major United States investment banking firms, large asset management firms, and major institutional investors.

23.     From 2001 through 2003, Yukos was engaged in multiple discussions with major United States based oil companies about their purchasing equity in both Yukos and its subsidiaries.  Yukos' principal shareholders had discussions about selling substantial amounts of their shares to various of these United States-based oil companies.

24.     Currently, substantial amounts of Yukos' American Depository Receipts ("ADRs") are traded in the U.S. on the over-the-counter market pursuant to a Level 1 ADR program.  In connection therewith, Yukos has registered with the Securities and Exchange Commission under the Securities and Exchange Act of 1933 and appointed an agent for service of process here in the United States.  Yukos had plans to upgrade its ADR facility to Level II or Level III under the U.S. Securities laws and to enable the listing of its ADRs directly on the New York Stock Exchange.

**The Russian Government Has Caused Yukos' Stock to Plummet in Value By Over $38 Billion Affecting U.S. Institutional Investors**

25.     Prior to October 25, 2003, the market capitalization of Yukos stock was over $40 billion.  As late as April 2004, Yukos' market capitalization had rebounded to over $40 billion.

However, beginning in April 2004, the Russian Government took a major improper, aggressive action concerning Yukos' taxes by delivering an additional tax bill holding Yukos fiscally liable for alleged tax offenses relating to year 2000 taxes.  This assessment was improper under Russian law and under international law (that Russia has agreed to be bound by), and has severely damaged the value of Yukos' stock.    Subsequently, the Russian Government has delivered similar improper additional tax assessments for 2001, 2002 and 2003 taxes.  Just eight months of these improper actions from the Russian Government have reduced Yukos' market capitalization from approximately $40 billion to approximately $2 billion.

26.    This means that the value of the approximately 15% of Yukos' common stock that was owned by institutional investors in April 2004 (mostly United States institutional investors) has declined from approximately $6 billion to approximately $300 million, a loss of approximately $5.7 billion of value to these institutional investors.

27.    Some smaller investors have initiated a securities law class action lawsuit against Yukos in the United States concerning this precipitous decline in the value of Yukos' stock, which was actually caused by the Russian Government's improper actions.  There are also press reports that institutional investors are trying to determine how to proceed with actions against the Russian government for causing this precipitous decline in the equity value of Yukos.

**Improper Russian Government Activity Relating To Tax Claims Against Yukos and Certain Affiliates**

28.    Aggressive Russian Government activity relating to Yukos began in October 2003, when the Russian government jailed Mikhail Khodorkovsky, Yukos' CEO and its largest indirect shareholder, on charges concerning, among others things, alleged tax liabilities related to Yukos.  This caused Yukos stock immediately to plummet in value down to a market cap of approximately $30 million.  It also caused a consummated acquisition of Sibneft, which would

have made Yukos by far the largest oil and gas company in Russia, with the largest oil reserves in the world, to be subject to challenge by the former Sibneft principal shareholders.

29.     Yukos' market cap rebounded by April 2004 to approximately the $40 billion it had been at before Mr. Khordorkovsky's arrest.  However, the Russian Government's improper tax assessments against Yukos and its subsidiaries since April 2004, totaling $27.5 billion, have now driven that market cap down to approximately $2 billion.

30.     These improper assessments were based on an unprecedented and illegal approach under which the contractual arrangements entered into by various different legal entities were attributed to Yukos instead.  This is not permitted under Russian tax law and resulted in the Russian Government's claims (1) challenging the use of legal tax incentive abatements in certain regions of Russia (in consideration for local economic development contributed by Yukos) that were permitted by the laws of the Russian Federation; and (2) asserting improper claims for value added taxes.  In addition, for the 2002 tax year, further improper assessments have been levied on certain of Yukos' subsidiaries relating to transfers between Yukos' affiliated companies, which Yukos charged based on average prices in a region (as provided by law), but as to which the Russian Government now claims the highest price in that region should have been used (not provided by law).  Many of these improper tax claims were asserted: (1) questioning application of Russian laws that had been  commonly used by Russian companies; (2) concerning prior tax years as to which Russian authorities had previously audited and confirmed that no additional taxes were due; and (3) involving selective, retroactive re-interpretations of Russian law, that could not reasonably have been anticipated when the transactions took place, as they are not based in Russian law.

31.     These inappropriate tax claims are not only substantially unwarranted, they are highly discriminatory, asserting tax claims against Yukos for 2001 (in excess of <u>4 times</u> consolidated  gross industry average taxes), for 2002 (in excess of  <u>3½ times</u> such industry average taxes), and for 2003 (in excess of <u>2½ times</u> such industry average taxes).

32.     Additionally, these improper tax claims are confiscatory.   Measured against Yukos' consolidated gross <u>revenues</u>, the Russian government has asserted <u>tax liability against Yukos for each of 2001 and 2002 in excess of 100% of Yukos' annual consolidated gross revenue</u> (not net income, <u>consolidated gross revenue</u>) and <u>for 2003 in excess of 80% of Yukos' consolidated gross annual revenue</u>.

**Improper Russian Government Remedies Concerning Improper Tax Claims
Against Yukos and Certain Subsidiaries**

33.     Beginning in April/May 2004, the Russian Government stepped up its aggressive attacks against Yukos, using various improper remedies concerning these improper and inflated taxes. Until May 2004, Yukos had successfully resolved all its transfer price cases.

34.     From April 2004, the Russian Government has frozen all of Yukos' assets by an Injunction preventing any assignment, charging or sale.   On June 2, 2004 the Russian Government increased its collection efforts against Yukos by obtaining a enforcement order which again froze all funds and assets.  The same order nevertheless required Yukos to pay the full liability assessed of $3.4 billion within 5 working days or pay a 7% surcharge in default. Because Yukos' assets were frozen, it could not pay, and the surcharge of $241 million was imposed.   Because of this enforcement decision, the shares in Yukos' principal production subsidiaries (YNG, Samaraneftgaz and Tomskneft) were seized with a view to levying execution against them.  On September 9, 2004, the Russian Government made orders permitting it to take money from Yukos to collect certain of these improper taxes without requiring a court order.

35.     Meanwhile on August 31, 2004 the Russian Government also obtained an order freezing the bank accounts of YNG based on baseless criminal charges brought concerning ordinary intercompany transfers from Yukos to its subsidiaries and on November 16, 2004 Yukos was served with a further assessment for $6.9 billion.  As a result of collection orders, Yukos and YNG, as well as the two other principal oil and gas producing subsidiaries, currently are unable to access most, if not all, of their cash to operate their businesses and are forbidden from assigning or charging any of their assets.

36.     Since May 2004, Yukos has not succeeded in defending itself in any significant tax dispute with the Russian authorities in Russian Courts.

**The December 19, 2004 Auction**

37.     The Russian Government has attached Yukos' shares of the common stock of YNG, Yukos' principal oil and gas producing subsidiary.  In contravention of Russian law, the Russian Government is conducting an auction of this YNG Stock, scheduled for December 19, 2004 (the "Auction") to raise money to pay a portion of Yukos' alleged $27.5 billion tax bill.

38.     The press has reported that OOO Gazpromneft ("Gazprom") has been instructed by the Russian Government, its principal shareholder, to bid for the YNG stock in this Auction. As of December 10, 2004, three entities have been reported to have filed with Russia's Federal Antimonopoly Service to bid at the Auction: (1) Gazprom; (2) OAO First Venture Company ("First Venture"); and (3) ZAO Intercom ("Intercom") (collectively, the "Auction Bidders"). According to the news agency, Interfax, Gazprom is raising financing for this Auction from a consortium of international banks, including:  (1) ABN Amro, (2) BNP Paribas, (3) Calyon, (4) Deutsche Bank, (5) Dresdner Kleinwort Wasserstein and (6) J.P. Morgan (collectively, the "Auction Financiers").  All of these Auction Financiers have U.S. offices and operations.

39.     Yukos believes that this Auction will not be conducted in a commercially reasonable fashion designed to bring the highest price.  Bids at the Auction will start at $8.65 billion, yet the Russian Government's own appraisal of YNG valued it at between $15.7 and $18.6 billion and independent assessments of its asset value suggest $20 billion or more (YNG produces approximately 1 million barrels of oil a day and is, by itself, one of the world's largest oil and gas companies).   Several major western oil companies and the Chinese national oil company which had previously expressed interest in the YNG assets have indicated that they will not participate in the Auction.  Yukos is not aware of either Intercom or First Venture as a company involved in the oil and gas industry, or as a company capable of such a substantial transaction.  If there is only one real bidder at the December 19, 2004 Auction, then the shares of YNG may be sold to state-owned Gazprom at a price substantially below YNG's asset value.

40.     Since announcing this Auction, the Russian Government has proceeded far down the ranks below Yukos' former CEO, Mr. Khodorkovsky, with its efforts to arrest Yukos' managers, keeping them from doing their jobs, and has jailed or threatened to charge other company employees on improper criminal charges.  <u>For example, within the past week, Svetlana Bakhmina, a young Deputy General Counsel of Yukos and the mother of two young children, was arrested late at night at her home in Moscow on charges relating to her legal work at Yukos.</u>  That is just one example, significantly repugnant, of a series of such recent arrests of Yukos Group employees as well as outside independent service providers.

**<u>The Auction Threatens Irreparable Damage to Yukos</u>**

41.     If the Auction is consummated, Yukos will be permanently, severely and irreparably damaged.  Without the Auction, were the Russian Government to cease its improper actions against Yukos tomorrow, Yukos' market capitalization would rebound, permitting

western institutional investors, who have not sold their Yukos stock during this decline, to recover their investments.   Yukos owns or enjoys the benefits of some of the world's largest oil and gas reserves, and crude oil is currently selling between $40 and $50 per barrel.   After the Auction, Yukos will have been dismembered, losing a subsidiary (YNG) with massive oil and gas assets worth $20 billion or more.   Once YNG is stripped away from Yukos in a sale obtaining inadequate value, there will be no chance for Yukos' equity value to return to anywhere near the $40 billion that the market had measured when Yukos still had all its assets.

### The Russian Foreign Investment Law and International Arbitration of Disputes

42.     These improper tax claims against Yukos, and the improper remedies used to collect them, and other actions of the Russian authorities, including the proposed Auction, are improper and illegal under international law and under the Federal Law on Foreign Investments in the Russian Federation of July 9, 1999 (the "Foreign Investment Law"), which provides protections for foreign investors and "companies with foreign investment." Because at least 10% of Yukos is owned by foreign investors, Yukos is entitled to avail itself of the protections and guarantees contained in the Foreign Investment Law.  The Russian Government is also required to treat Yukos and its investment and business activities in a manner consistent with Russian international treaty obligations as well as international law.  Under that Foreign Investment Law, the Russian Government is obligated to treat Yukos "in keeping with international norms" and to resolve any disputes concerning such treatment through international arbitration.   Yukos asks this Court to order such an international arbitration.

43.     Because the Russian Government has consented to arbitrating disputes with a company such as Yukos, this Court can order the Russian Government to submit to international arbitration under the United States Federal Arbitration Act, 9 U.S.C. §§ 1-16, 201-208, 301-307

(2000). The U.S. Supreme Court has ruled that U.S. Bankruptcy Courts must respect the Federal Arbitration Act and order certain disputes concerning debtors to arbitration under that Act.

44.     Once this dispute is ordered to arbitration, Yukos will prove that the conduct of the Russian Government in connection with its tax assessments against Yukos is not in keeping with Russian law or international norms. Once that is found by the Arbitrator, and the Russian Government ceases its improper and illegal actions directed at taking the assets of Yukos, Yukos will be able to file a Chapter 11 plan and emerge from bankruptcy with substantial value for its equity. Without improper aggressive government action against it, Yukos' substantial asset values will cause its market capitalization to rebound toward the $40 billion value the market recognized as recently as April 2004.

### Yukos Needs A TRO And Preliminary Injunction Enforcing The Automatic Stay

45.     Yukos asks this Court to enforce the automatic stay that went into place with respect to Yukos' assets worldwide when Yukos filed this Chapter 11 bankruptcy case. In particular, Yukos asks this Court to enjoin the Russian Government from completing the sale of the YNG Stock that is currently proposed at the Auction on December 19, 2004, which, as described in the press, will likely result in the sale of the stock of YNG to Gazprom at a price significantly below market. There may only be one real bidder at this sale, the bids will start at $8.65 billion, and YNG's assets are worth $20 billion or more.

46.     To make this injunction meaningful, Yukos also asks this Court to enjoin Gazprom and any other persons that either have bid, or who might bid, from participating in that Auction. Finally, Yukos asks this Court to enjoin various international financial institutions, that have operations in the United States, from financing the bid of Gazprom, or any other person to purchase the assets of Yukos.

47.     Unless this Court enters such an order this week, Yukos will be severely and irreparably harmed, and will not have a chance to reorganize.

## RELIEF REQUESTED

48.     The Debtor will suffer irreparable harm, for which there is no adequate remedy at law, if the Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, are not enjoined permanently from all actions seeking: (a) to continue pre-petition actions and proceeding against the Debtor to recover a claim against the Debtor that arose before the commencement of the case; (b) the enforcement against the Debtor or against property of the estate of a judgment obtained before the commencement of the case; (c) to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (d) to create, perfect, or enforce any lien against property of the estate; (e) to create, perfect, or enforce against property of the Debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (f) any act to collect, assess, or recover a claim against the Debtor that arose before the commencement of the case under this title; and (g) the setoff of any debt owing to the Debtor that arose before the commencement of the case under this title against any claim against the Debtor.

49.     In particular, the Debtor seeks to enjoin the Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from taking any actions with respect to the YNG stock pending international arbitration between the Debtor and the Russian Federation concerning alleged tax liabilities.

50.     The issuance of a preliminary restraining order prohibiting an auction of the YNG Stock from taking place and temporarily enjoining all further attempts by parties to take away the Debtor's assets will protect the public interest by insuring that the investments of U.S.

residents in the Russian Federation are treated in accordance with international norms as guaranteed by the Russian Federation in the Foreign Investment Law.

## **PRAYER FOR RELIEF**

Plaintiff Yukos Oil Company prays that this Court enjoin the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from proceeding with the Auction of YNG Stock planned December 19, 2004 or any subsequent auction or other sale of that Stock during pendency of this Chapter 11 case, and for such other and further relief to which the plaintiffs may be entitled either in law or in equity.

Dated: December 14, 2004,
      Houston, Texas

<div style="margin-left:40%">

Respectfully submitted,

**FULBRIGHT & JAWORSKI, LLP**

/s/ Zack A. Clement_____
Zack A. Clement
State Bar No. 04361550
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151 Main
(713) 651-5246 Facsimile

Attorney in Charge for
YUKOS OIL COMPANY

</div>

Of Counsel:
C. Mark Baker
State Bar No. 01566010
Evelyn H. Biery
State Bar No. 02305500
John A. Barrett
State Bar No. 01812000
Johnathan C. Bolton
State Bar No. 24025260
R. Andrew Black
State Bar No. 02375110

30841227.7

**FULBRIGHT & JAWORSKI, LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151 Main
(713) 651-5246 Facsimile

## VERIFICATION

THE STATE OF TEXAS      §
                                              §
COUNTY OF HARRIS      §


BEFORE ME, on this day personally appeared Bruce K. Misamore, who, after being duly sworn, on oath stated:

My name is Bruce K. Misamore.   I am the Chief Financial Officer of Yukos Oil Company.

I am over the age of 18, have not been convicted of a felony, have personal knowledge of the matters set forth herein.  I have read the foregoing Plaintiff's Original Complaint for Injunctive Relief and the facts stated therein are true and correct to the best of my knowledge and information.

I hereby sign this under penalty of perjury on this 14th day of December, 2004.



Bruce K. Misamore


SUBSCRIBED AND SWORN TO BEFORE ME by this ____ day of _____, 2004.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS


CLIFTON JOURNET, III
MY COMMISSION EXPIRES
May 10, 2005

30841227.7                                          -18-